(No. 4519—

GERTRUDE SKAGGS, ADMX., ET AL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 31, 1953.*

WALTER T. DAY, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

DELANEY, C. J.

Gertrude Skaggs filed her complaint on June 19, 1952, as Administratrix of the Estate of Freddie Horace Skaggs, seeking to recover for damages sustained as a result of the death of her husband in an accident, which occurred on State Highway No. 29, approxi-

mately five miles southwest of Mason City, Illinois, on June 28, 1951.

The record consists of the complaint, answer of respondent, original transcript of evidence, copy of transcript of evidence, abstract of evidence, motion of claimant for an extension of time to February 4, 1953 in which to file statement, brief and argument, order of Chief Justice granting the motion of claimant for an extension of time to February 4, 1953 in which to file statement, brief and argument of claimant, and the oral arguments of attorneys representing the parties herein.

The evidence discloses that the decedent and claimant were married on July 1, 1943 in St. Louis, and at the time of the accident were husband and wife, although they were not living together, but he was contributing to her support. Mr. Skaggs was employed as a bridge carpenter on a railroad, and on June 27, 1951 worked near Barr Station, north of Springfield, and after work he drove to Pekin, Illinois to obtain his pay check. Sometime during the late evening of June 27, or the early morning of June 28, 1951 he was returning from Pekin to the work train, and was driving south on State Route No. 29. While driving south on said highway, and while attempting to cross a bridge over a creek, known as "Sleepy Hollow", the bridge and approaches thereto collapsed, or had previously collapsed, allowing his car to fall into the stream. The car was carried down the stream some 500 feet, and the next morning he was found in the car drowned.

The physical facts would indicate that the bridge approach was still in position at the time Skaggs approached the bridge, since there was glass from his headlights on the northwest corner of the bridge, in-

dicating that his car had collided with the bridge, and the road had then collapsed, allowing the car to fall some 15 feet into the water. The evidence as to the bridge indicates that it had been in place for quite a few years, but that there had been several complaints made about the approach being undermined, and that the bridge abutments themselves were being undermined. The claimant's case was supported by the testimony of Frank C. Snyder, Carl W. Seinert, and Howard McLaughlin, who lived in the immediate vicinity of the bridge. Snyder testified that on one occasion he took the highway section man to the bridge, and pointed out that the fill supporting the bridge approach was washing out, was undermined, and that on occasions dogs had chased rabbits back as far as 15 to 20 feet under the slab. There was also testimony to the effect that the bridge abutments were being undermined, and that the State had erected a dam at the east edge of the bridge abutments in order to raise the water level, and allow the natural fill to build up around the abutments, so that they would not become further undermined. In addition to building the dam, cinders and other objects were dumped into the bed of the stream in order to build up the ground level. There is also evidence to the effect that complaint was made that the cinders would not hold the wash, and that concrete and other more substantial materials were needed. These facts as to the condition of the approaches, fills, and abutments were substantiated by the witnesses for both claimant and respondent, although the respondent's witnesses, including Mr. Shewmaker, engineer for the Highway Department, and the highway section man contended that they had made proper repairs of the conditions, as they occurred.

The evidence further discloses that on the evening and night of June 27, 1951 a very heavy rainfall occurred in the Sleepy Hollow Valley, and that there were special rules and regulations in effect with the Highway Department as to their activities when rain occurred in this neighborhood. The highway section men had made an inspection trip sometime around midnight, or prior thereto, but did not find anything unusual in the immediate vicinity. The fact that the bridge had collapsed was first discovered by Pearl Marcum, who was driving north on Highway No. 29, returning from Springfield, Illinois to her home north of the bridge. At that time she noticed something was wrong, and stated that the north edge of the bridge was some three or four feet below the road level, but she was unable to state whether or not the bridge approach had collapsed because of the darkness. She aroused neighbors in the immediate vicinity, the highway section men were called, and proper flares and warning signals were placed in position.

Sometime in the early morning of June 28, 1951 the car of Mr. Skaggs was discovered some 500 feet downstream from the bridge, and Mr. Skaggs was found in the front seat of the car. An ambulance was called, and his body was removed to a funeral home.

Although the respondent is not an insurer of the traveling public on its highways, it has the duty of keeping its highways in a reasonably safe state of repair. We feel that the respondent is bound by a greater degree of care in the maintenance of bridges than the maintenance of other portions of the highway.

Respondent claims it did not have actual notice that the bridge had collapsed. The evidence, however, indicates that the respondent had constructive notice.

The negligence of respondent was the proximate cause of the accident, and the death of Mr. Skaggs.

Claimant raises a further question as to the amount of the award that the Court of Claims is authorized to make.

In the 67th General Assembly, Section 8 C of the Court of Claims Act was amended by House Bill No. 900, in the following manner:

"All claims against the State for damages in cases sounding in tort, in respect of which claims the claimants would be entitled to redress against the State of Illinois, at law or in chancery, if the State were suable, and all claims sounding in tort against The Board of Trustees of the University of Illinois; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $7,500.00 to or for the benefit of any claimant. The defense that the State or The Board of Trustees of the University of Illinois is not liable for the negligence of its officers, agents, and employees in the course of their employment shall not be applicable to the hearing and determination of such claims."

This Act was approved by Governor Adlai E. Stevenson on July 16, 1951.

It is claimant's contension that under the Court of Claims Act, as amended, the Court can now make an award in excess of $2,500.00; and, that while the Injuries Act specifically fixes the date of death as the determining factor, limiting the amount of recovery, there is a distinction between the date of death, as in the Injuries Act, and date of award, as in the Court of Claims Act.

It is the opinion of this Court that it was the legislative intent that the amended act would apply only when the date of the injury, which would be the date the cause of action accrued, is subsequent to the effective date of the amendment. It is also the opinion of the Court that there is no distinction between the date of death, as in the Injuries Act, and date of award, as in the Court of Claims Act. Therefore, any cause of action accruing subsequent to July 16, 1951

would be governed by the amended act. *Shockley* vs. *State*, No. 4387, opinion filed November 12, 1952.

An award is, therefore, made to claimant, Gertrude Skaggs, Administratrix of the Estate of Freddie Horace Skaggs, in the sum of Twenty-Five Hundred Dollars ($2,500.00).